UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OSCAR MADRIGAL SENCION,<br><br>    Plaintiff,<br><br>    v.<br><br>SAXON MORTGAGE SERVICES, INC, et al.,<br><br>    Defendants. | Case No.: CV 10-03108 PSG<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART SAXON'S MOTION TO DISMISS**<br><br>**(Re: Docket No. 7)** |

This foreclosure action is brought by Plaintiff Oscar Sencion ("Sencion") against Defendants Saxon Mortgage Services ("Saxon"), Ocwen Loan Servicing ("Ocwen"), and "DOES 1-100." Sencion's first amended complaint ("FAC") alleges: (1) breach of fiduciary duty, (2) negligence, (3) a violation of California Business and Professions Code § 17200 *et seq.*, (4) declaratory relief, and (5) quiet title. For the reasons stated below, Saxon's motion to dismiss is DENIED-IN-PART, and GRANTED-IN-PART with leave to amend.

**I. BACKGROUND**

According to the FAC, Sencion was the owner of real property located at 9120 Murray Ave., Gilroy, CA (the "Subject Property").[1] Sencion began having trouble making his monthly mortgage

---

[1] *See* 6/01/2010 FAC ¶ 6 (Docket No. 1 Ex. A).

ORDER, *page 1*

payments in Spring 2008,[2] so he applied for a loan modification with the help of a loan modification agent, Martin Garcia ("Garcia").[3]

On April 27, 2009, a Notice of Default and Election to Sell Under Deed of Trust was recorded at the Santa Clara County Recorder.[4] Sencion never received a copy of this notice.[5] A Notice of Trustee's Sale was recorded on or about July 30, 2009.[6] This notice of sale indicated that the property would be auctioned on August 18, 2009. Attached to this notice is a declaration that Defendants contacted Sencion on January 16, 2009 to discuss his financial situation and options to avoid foreclosure.[7] Sencion never received a copy of this notice.[8] Contrary to the attached declaration, Sencion was not contacted on January 16, 2009 and did not receive a copy of the notice of sale.[9]

Sencion received a trial loan modification, and according to the terms of that agreement, paid $5,135.93 per month for three months between August 1, 2009 and October 1, 2009.[10] Defendants cashed all these checks.[11] Garcia communicated weekly with Defendants about Sencion's application for a permanent loan modification.[12] Sencion continued to make monthly payments according to the

---

[2] *See* FAC ¶ 8.

[3] *See* FAC ¶ 14.

[4] *See* FAC ¶ 9.

[5] *See* FAC ¶ 10.

[6] *See* FAC ¶ 11.

[7] *See* FAC Ex. C.

[8] *See* FAC ¶ 12.

[9] *See* FAC ¶ 12.

[10] *See* FAC ¶ 15 and Ex. E.

[11] *See* FAC ¶ 16.

[12] *See* FAC ¶ 17.

trial loan modification through March 1, 2010, while Defendants reviewed Sencion's application.[13] Defendants cashed all these checks as well.[14]

On September 1, 2009, Sencion received a Notice of Intent to Accelerate from Defendants that stated that he was in default under the terms of his mortgage.[15] On November 24, 2009, Saxon notified Sencion that, effective January 1, 2010, Sencion was approved for new interest rate and a lower monthly payment of $4,537.00.[16] On February 8, 2010, Sencion again received a Notice of Intent to Accelerate which stated that he was in default under the terms of his mortgage and instructed him to cure the default by paying $14,599.52 by March 7, 2010.[17] On March 3, 2010, Sencion received a letter from Defendants informing him that he had been approved for a final modification agreement.[18]

On approximately March 18, 2010, Sencion's friend, Hilda Andrade ("Andrade"), on an errand to the County Recorder's Office, ran a search using Sencion's name and no notices were recorded at that time regarding the property.[19] On approximately March 19, 2010, the property was sold to Defendants.[20] On March 22, 2010, a Notice of Default and Election to Sell Under Deed of Trust was recorded indicating that Sencion owed Defendants $29,582.25.[21] Sencion never received a copy of that notice of default. On March 26, 2010, Sencion found a Notice to Quit on his porch.[22]

That same day, Defendants recorded a Trustee's Deed that granted the property to Deutsche

---

[13] *See* FAC ¶ 19.

[14] *See* FAC ¶ 19 and Ex. F.

[15] *See* FAC Ex. G.

[16] *See* FAC ¶ 23.

[17] *See* FAC Ex. K.

[18] *See* FAC Ex. M.

[19] *See* FAC ¶ 27.

[20] *See* FAC ¶ 32.

[21] *See* FAC ¶ 28 and Ex. N.

[22] *See* FAC ¶ 30 and Ex. O.

Bank National Trust Company ("Deutsche").[23] On March 30, 2010, Andrade obtained a copy of the Notice of Default from April 27, 2009 and the Notice of Default from March 22, 2010 from the Country Recorder's Office.[24] On April 21, 2010, Saxon transferred the servicing of Sencion's loan to Ocwen.[25]

Based on these allegations, Sencion filed the original complaint on April 4, 2010 in Santa Clara County Superior Court[26]. In April 2010, that court issued a temporary restraining order and then a preliminary injunction enjoining Saxon from proceeding with foreclosure or unlawful detainer proceedings against Sencion.[27] Sencion filed the FAC on June 1, 2010.[28] On July 15, 2010, the case was removed to federal court on the basis of diversity jurisdiction.[29]

On July 22, 2010, Saxon filed the instant Motion to Dismiss the FAC.[30] Sencion did not file any opposition before the August 10, 2010 deadline.[31] The court issued an Order to Show Cause Why Motion To Dismiss And Motion To Strike Should Not Be Granted, At Least In Part, As Unopposed ("Order to Show Cause").[32] In the Order to Show Cause, the court held that Saxon's Motion to Dismiss failed regarding Sencion's negligence claim, but ordered Sencion to file a brief showing cause why the motion to dismiss should not be granted as to the First, Third, Fourth, and Fifth Causes of

---

[23] *See* FAC Ex. Q.

[24] *See* FAC ¶ 34.

[25] *See* FAC ¶ 37.

[26] *See* 7/15/2010 Notice of Removal of Action to Fed. Ct. ¶ 1 (Docket No. 1) ("Rem.").

[27] *See* FAC ¶¶ 35-6.

[28] *See* FAC at 1, 13.

[29] *See* Rem.

[30] *See* 7/22/2010 Mot. Dismiss Pl.'s FAC (Docket No. 7) ("Mot."). Both parties have requested judicial notice of documents in support of their positions regarding this motion to dismiss. *See* Req. Jud. Notice (Docket No. 9) and FAC ¶ 35. We do not consider these requests for judicial notice because none of the materials are necessary for resolving the issues that we reach.

[31] *See* Civ. L.R. 7-3.

[32] *See* 8/27/2010 Order Show Cause Why Mot. Dismiss and Mot. Strike Should Not Be Granted, At Least in Part as Unopposed (Docket No. 19) ("Order to Show Cause").

Action. Sencion subsequently filed an opposition,[33] and Saxon filed a reply.[34] The parties appeared before this court on January 7, 2011 for oral arguments.

## II.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[35] While "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[36] In other words, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."[37] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in a complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[39]

When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[40] Review of a motion to dismiss is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[41] The court is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[42] Further, the court need not accept as true allegations

---

[33] *See* 9/14/2010 Opp'n to Def. Saxon's Mot. Dismiss (Docket No. 25) ("Opp'n").

[34] *See* 9/21/2010 Reply by Saxon to Opp'n to Mot. Dismiss FAC (Docket No. 28) ("Reply").

[35] Fed. R. Civ. P. 8(a)(2).

[36] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[37] *Id*. at 1940 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[38] *Id.* at 1940.

[39] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

[40] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir.2008)).

[41] *See id.* at 1061.

[42] *Clegg v. Cult Awareness Network*, 18 F. 3d 752, 754-55 (9th Cir. 1994).

that contradict matters that are either subject to judicial notice or attached as exhibits to the complaint.[43]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[44] If dismissing with prejudice, a district court's failure to consider the factors relevant to whether amendment should be permitted and failure to articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion.[45]

### III. DISCUSSION

**A. COUNT 1: BREACH OF FIDUCIARY DUTY**

A proper claim for breach of fiduciary duty must establish (1) existence of a fiduciary duty, (2) breach of the fiduciary duty, and (3) resulting damage.[46] Saxon argues that the FAC does not state facts that satisfy the first element: a fiduciary duty owed by Saxon to Sencion. Saxon notes that the FAC alleges Saxon was Sencion's mortgage company,[47] which would make the relationship between Saxon and Sencion a lender-borrower relationship. Saxon argues that the lender-borrower relationship is not fiduciary.[48] Sencion responds that a fiduciary duty arose when Saxon issued the permanent loan modification and the trial loan modification, with which Sencion complied.[49]

Under ordinary circumstances the relationship between a lender-borrower is not a fiduciary one.[50] A commercial lender is entitled to pursue its own economic interests in a loan transaction.

---

[43] *See In re Gilead Sciences Securities Litigation*, 536 F. 3d 1049, 1055 (9th Cir. 2008).

[44] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th Cir. 2003).

[45] *See id.* at 1052.

[46] *See Pellegrini v. Weiss*, 81 Cal. Rptr. 3d 387, 397 (Ct. App. 2008).

[47] *See* FAC ¶ 41.

[48] *See* Mot. at 3.

[49] *See* Opp'n at 5.

[50] *See Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 477 (Ct. App. 1989); *see also Huerta v. Ocwen Loan Servicing, Inc.*, No. 09-05822(HRL), 2010 WL 728223, at *4 (N.D. Cal. Mar. 1, 2010) (stating that from this rule "[i]t follows logically that a loan servicer has no fiduciary duty to a borrower when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer").

This right is inconsistent with the obligations of a fiduciary, which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another.[51] A fiduciary duty can nevertheless arise from special circumstances even though there would be no fiduciary duty in the absence of such circumstances.[52]

But here, the FAC does not state special circumstances that distinguish Saxon's relationship with Sencion from the typical lender-borrower relationship. Sencion argues that the loan modification created a fiduciary duty, but to the extent Saxon had a contractual duty to complete Sencion's loan modification that duty is "defined by the contract, not by any fiduciary status."[53] Furthermore, rather than agreeing to subordinate its interests to act on behalf of Sencion, if Saxon agreed to a loan modification, according the California Legislature, Saxon was acting "in the best interests of *all parties* to the loan pool or investors in the pooling and servicing agreement."[54] At oral argument Sencion's counsel provided no further explanation about special circumstances that could create a fiduciary relationship between Saxon and Sencion. Count One is therefore dismissed without prejudice.

**B. COUNT 2: NEGLIGENCE**

A proper claim for negligence must allege that "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure

---

[51] *See Nymark v. Heart Fed. Sav. & Loan Assn.*, 283 Cal. Rptr. 53, n. 1 (Ct. App. 1991).

[52] *See Los Angeles Sheet Metal Workers' Joint Apprenticeship Training Comm. v. Walter,* 139 F. 3d 906 (9th Cir. 1998); *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944 (9th Cir. 2002) (holding that a fiduciary duty exists where the lender exercises dominion and control over the borrower).

[53] *Justo v. Indymac Bancorp*, No. SACV 09-1116 JVS(AGRx), 2010 WL 623715, at *6 (C.D. Cal. Feb. 19, 2010) (also holding that "[m]ere offers to provide alternatives to foreclosure or to modify loans do not create a fiduciary relationship"); *see also St. James v. JP Morgan Chase Bank Corp.*, No. 10cv1893-IEG(POR), 2010 WL 3703315, at *3 (S.D. Cal. Sep. 15, 2010) (holding that where plaintiff entered into the Making Home Affordable program and made monthly payments under that agreement, those facts did not demonstrate that defendants owed him a fiduciary duty).

[54] Cal. Civ. Code § 2923.6 (West 2010) (emphasis added).

to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)."[55]

Saxon claims that Sencion fails to allege both that a duty of care existed and that it was breached. Saxon notes that Sencion only claims that Saxon was his mortgage company[56] and argues a lender owes no duty of care to a borrower when the lender's involvement in the loan transaction does not exceed the scope of its conventional role as a money-lender. Saxon additionally notes that if a duty of care exists and is defined by state statutes regulating foreclosure, then Sencion has not claimed that that duty was breached. Sencion filed no opposition to the motion to dismiss this claim, explaining that it was not required to do so by the court's Order to Show Cause.

The court has already ruled on these arguments and denied Saxon's motion to dismiss the negligence claim, and Saxon offers no persuasive reason to reconsider that ruling.[57] Judge Trumbull held in the Order to Show Cause that Saxon's motion to dismiss regarding negligence failed as a matter of law:

> "Saxon has not shown that dismissal of the Second Cause of Action (Negligence) is warranted. Contrary to Saxon's argument, the law is not that a lender never owes a duty of care to a borrower. Construing the complaint in the light most favorable to the non-moving party, as courts must on a motion to dismiss, Plaintiff alleges that Saxon undertook the modification of his loan, and that Saxon was responsible for the foreclosure sale of his home at a time when Saxon had already approved his loan modification. Thus, the complaint adequately alleges facts supporting a finding of both a duty of care and a breach of that duty of care."[58]

Therefore, as to Count Two, Saxon's motion to dismiss is again denied.

**C. COUNT 3: CAL. BUS. & PROF. CODE § 17200 *ET SEQ* ("UCL")**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."[59] Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful,

---

[55] *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983 (Ct. App. 2008)).

[56] *See* FAC ¶ 41 and Mot. at 4.

[57] Pursuant to Civ. L.R. 7-9, a party may request leave to file a motion for reconsideration of an order if there are material facts or law the court did not consider before the entry of that order; the party may not repeat their previous arguments regarding that order.

[58] Order to Show Cause at n. 1 (internal citations omitted).

[59] Cal. Bus. & Prof. Code § 17200 (West 2010).

(2) unfair, or (3) fraudulent.[60] Sencion alleges that Saxon's conduct violated all three prongs. Saxon argues that the claim is not pleaded with reasonably particularity and that it is impossible to discern which of its acts or practices are allegedly unfair, unlawful, or fraudulent.[61] Sencion responds that the FAC is specifically pleaded and sets forth Saxon's actionable business acts or practices including "its unlawful sale of the Subject Property."[62]

**1. UNLAWFUL CONDUCT**

"By proscribing 'any unlawful' business practice, [the UCL] 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."[63] At least with respect to the "unlawful" prong of the UCL, "[a] plaintiff alleging unfair business practices . . . must state with reasonable particularity the facts supporting the statutory elements of the violation."[64] A plaintiff need not list specifically the statutory elements of a violation, but the complaint must contain sufficient factual content to support each element of a violation.[65]

Sencion claims Saxon violated Cal. Civ. Code § 2923.5, specifically paragraph c, because Sencion did not receive the Notice of Default or Notice of Sale or any communication to discuss options to avoid foreclosure. Under § 2329.5(c), if the notice of default was filed prior to the enactment of this statute on September 6, 2008, then the notice of sale must include a more detailed declaration describing the contact or the efforts made to contact the borrower. Cal. Civ. Code § 2329.5(c), however, does not apply in this instance because the Notices of Default were filed on April 27, 2009 and March 22, 2010, after the enactment of the statute.

Sencion also fails to state a claim under the other paragraphs of Cal. Civ. Code § 2329.5 because, although Sencion states that he never received any communication about avoiding

---

[60] *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).

[61] *See* Mot. at 4.

[62] *See* Opp'n at 7.

[63] *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

[64] *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (Ct. App. 1993).

[65] *See Brooks v. ComUnity Lending, Inc.*, No. C 07-4501 JF (PVT), 2010 WL 2680265 (N.D. Cal. Jul. 6, 2010).

foreclosure, no section of the statute requires that contact actually occur as long as due diligence was exercised. In the FAC, Sencion does not allege that Saxon failed to use due diligence.[66]

In his opposition brief, Sencion claims his § 17200 claim is also tethered to Cal. Bus. & Prof. Code § 17500, which makes it unlawful to make or disseminate, before the public, any statement which is untrue or misleading. The FAC states that the declaration attached to the Notice of Sale falsely indicates that Sencion was contacted to discuss alternatives for foreclosure. The FAC, however, does not mention § 17500. Thus, Sencion's allegations of unlawful conduct are insufficient to state a UCL claim.[67]

### 2. UNFAIR CONDUCT

Saxon also argues that Sencion's UCL claims relating to "unfair" conduct is insufficiently pleaded. What constitutes unfair conduct in consumer actions under the UCL is not specifically defined.[68] In *Camacho v. Automobile Club*, however, the California Second District Court of Appeal concluded that "unfairness" under the UCL should be judged by the same standard used by the Federal Trade Commission when applying 15 U.S.C. § 45(n).[69] Under this definition, a practice is unfair if (1) it causes substantial injury, (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided.

Saxon argues that Sencion has failed to allege these elements. Sencion responds that the FAC states sufficient facts that (1) Saxon's sale of the property after the loan modification substantially injured Sencion because he lost title to his property, (2) there is no justification for the sale that

---

[66] The court notes that Cal. Civ. Code §§ 2924b and 2924f (West 2010) also govern how the notice of default and the notice of sale must be posted, published, and mailed, but also do not require actual receipt of the notices. Sencion has not asserted that Saxon failed to comply with those statutory requirements.

[67] Sencion also argues that he has pleaded an unlawful act because he stated that Saxon foreclosed on the Subject Property while he was actively participating in a trial loan modification. But the FAC does not allege what law was violated by foreclosing after a trial loan modification and, therefore, does not include the requisite pleading of sufficient factual content to support each element of the violation.

[68] *See Camacho v. Automobile Club of Southern California,* 48 Cal. Rptr. 3d 770, 774 (Ct. App. 2006).

[69] *See id* at 776-77.

outweighs the harm to Sencion, and (3) Sencion acted reasonably by successfully pursuing a loan modification but could not avoid the injury. Although Sencion now argues that there is no "reason, justification, or motive for its unlawful sale of [the Subject Property] that will outweigh the harm [Sencion has] suffered and continue[s] to suffer to the present,"[70] the FAC does not address this point nor does it state any facts regarding countervailing benefits.

### 3. FRAUDULENT CONDUCT

Saxon argues that Sencion has not sufficiently pleaded any fraudulent business act because he has not pleaded fraud with particularity. Saxon lists the four elements of the tort of fraud and cites cases that deal with that common law tort. Sencion responds that it has stated facts sufficient to plead those four elements.

The term "fraudulent" as used in section 17200, however, "does not refer to the common law tort of fraud but only requires a showing that members of the public are likely to be deceived."[71] The FAC clearly states that the public is likely to be deceived by Saxon's statements and agreements, including statements that the final loan modification was forthcoming and the omission of information regarding the sale during the continuous contact with Sencion and Garcia throughout the loan modification process.[72] Therefore, as to Count Three, Saxon's motion to dismiss is denied.

## D. COUNT 4: DECLARATORY RELIEF

Sencion seeks a judicial declaration of the rights and obligations of the parties regarding the Subject Property under California Foreclosure Law. Saxon argues that Sencion's claim for declaratory relief is not sufficiently pleaded because he seeks only to redress past wrongs instead of prospective rights and that he has not pleaded facts establishing his right to the sought-after declaration.[73] Sencion responds that there is an actual controversy because there are rights and

---

[70] Opp'n at 8.

[71] *Saunders v. Superior Court*, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994) (internal citations omitted); *see also Distor v. U.S. Bank NA*, C 09-02086 SI, 2009 WL 3429700, at *9 (N.D. Cal. Oct. 22, 2009).

[72] *See* FAC ¶ 58.

[73] *See* Mot. at 6.

obligations that run between Saxon and Sencion, as Saxon is the servicer of the mortgage and the holder of the property.[74]

Under Cal. Civ. Proc. Code § 1060,

"[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises."[75]

A claim for declaratory relief requires the plaintiff to demonstrate the existence of an actual controversy regarding the legal rights of the parties.[76] Declaratory relief operates prospectively and not merely for the redress of past wrongs.[77] The purpose of a declaratory judgment is to set controversies at rest before they cause harm to the plaintiff in the interest of preventive justice, not to remedy harms that have already occurred.[78]

Although the sale of the Subject Property has already occurred, as have any violations of foreclosure law that may have occurred in conjunction with that sale, Sencion argues there are prospective rights and obligations that run between Saxon and Sencion, because Saxon services the mortgage and holds the property. The FAC and the attached exhibits, however, indicate that Saxon neither services the loan nor owns the property. The FAC states that "on or about April 21, 2010, [Saxon] assigned, sold, and/or transferred the servicing of [Sencion's] loan to [Ocwen],"[79] thereby contradicting Sencion's assertion that Saxon is currently servicing the property. Additionally, although the FAC alleges that "Defendants purchased the Subject Property,"[80] which presumably includes Saxon, the Trustee's Deed attached as Exhibit Q to the FAC indicates that Deutsche Bank National Trust Company ("Deutsche") purchased the property. As a result, the court need not accept

---

[74] *See* Opp'n at 9-10.

[75] Cal. Civ. Proc. Code § 1060 (West 2010).

[76] *See McClain v. Octagon Plaza, LLC*, 71 Cal. Rptr. 3d 885, 898 (Ct. App. 2008).

[77] *See Babb v. Superior Court of Sonoma County*, 3 Cal. 3d 841, 848 (1971); *see also Jensen v. Quality Loan Service Corp.*, 102 F. Supp. 2d 1183, 1188 (E.D. Cal. 2010).

[78] *See Babb*, 3 Cal. 3d at 898; *see also Jensen*, 102 F. Supp. 2d at 1188.

[79] *See* FAC ¶ 37.

[80] *See* FAC ¶ 70.

as true Sencion's allegation that Saxon purchased the Subject Property because it is contradicted by the attached Trustee's Deed. Furthermore, at oral argument, Sencion admitted that this claim "may be more directed toward Ocwen and [Deutsche] should Deutsche be added to the complaint."[81] Therefore, Sencion has not stated any actual controversy relating to the prospective legal rights and duties between Saxon and Sencion. Count Four, therefore, is dismissed without prejudice.

### D. COUNT 5: QUIET TITLE

Finally, Saxon argues that Sencion failed to state a claim to quiet title because he does not allege sufficient grounds to undo the trustee's sale and because he has failed to allege that he will tender the amount of his default.[82] Sencion admits he has not alleged he could provide tender but argues that, in this case, requiring tender would be inequitable because he paid under the trial loan modification agreement, was approved for a permanent loan modification, and received no notice about the sale.[83]

The court need not rule on the parties' arguments regarding Sencion's claims to title or whether tender is required because the quiet title claim fails on other grounds. Under California law, in order to adequately allege a cause of action to quiet title, a plaintiff's pleadings must include "the date as of which the determination is sought."[84] The FAC does not state the date as of which the determination is sought.

Furthermore, the pleading must include a description of "[t]he adverse claims to the title of the plaintiff against which a determination is sought."[85] A plaintiff is required to name the "specific adverse claims" that form the basis of the property dispute.[86] As discussed above, the court need not

---

[81] FTR 11:26:50-11:27:00

[82] *See* Mot. at 7.

[83] *See* Opp'n at 12.

[84] Cal. Civ. Proc. Code § 761.020(d) (West 2010).

[85] Cal. Civ. Proc. Code § 761.020(b) and (c).

[86] *See* Cal. Civ. Proc. Code § 761.020 at Law Revision Commission Comments to 1980 Addition.

1  accept as true the allegation that Saxon purchased the Subject Property[87] because it is contradicted by
2  the attached Trustee's Deed.  Similarly, the allegation that "Defendants have sold the property"
3  presumably includes Saxon, but that allegation is also contradicted by the attached Trustee's Deed,
4  which states that Regional Service Corporation sold the Subject Property to Deutsche.[88]  Thus
5  regardless of whether the determination of title were sought as of a date before or after the sale,
6  Sencion has failed to state that Saxon has an adverse claim to title.

   Because Sencion has failed to state the date as of which the determination is sought and failed
   to state that Saxon has any adverse claims to his title, Count Five is dismissed without prejudice.

Dated: January 28, 2011

*/s/ Paul S. Grewal*
PAUL S. GREWAL
United States Magistrate Judge

---

[87] *See* FAC ¶ 70.

[88] *See* FAC Ex. Q.